Michelle O[1].,                                    )
                                                   )
            Plaintiff,                             )
                                                   )
     v.                                            )     CIVIL NO.  2:18cv358
                                                   )
NANCY A. BERRYHILL, Acting                         )
Commissioner of Social Security,                   )
                                                   )
            Defendant.                             )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for Disability
Insurance Benefits (DIB), as provided for in the Social Security Act.  Section 205(g) of the Act
provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the
transcript of the record including the evidence upon which the findings and decision complained
of are based.  The court shall have the power to enter, upon the pleadings and transcript of the
record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with
or without remanding the case for a rehearing."  It also provides, "[t]he findings of the
[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42
U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to last for a continuous period of no less than 12 months. . . ."

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act

through September 30, 2018.

2.     The claimant has not engaged in substantial gainful activity since March 4, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.     The claimant has the following severe impairments: bipolar disorder, anxiety, degenerative disc disease of the cervical spine, and obesity (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lifting/carrying 20 pounds occasionally and 10 pounds frequently. The Claimant could stand/walk approximately 6 hours per 8-hour workday and sit approximately 6 hours. Claimant could never climb ladders, ropes, or scaffolds. She could perform postural activities (i.e. climbing ramps/stairs, balancing, stooping, crouching, kneeling, crawling) on a frequent basis. Claimant is to avoid concentrated exposure to dangerous moving machinery and all exposure to unprotected heights. Claimant is limited to simple and routine work. Claimant is limited to work performed at an average pace with no fast paced production requirements involving only end of day production requirements, with no hourly or other periodic production quotas. Claimant can have only occasional contact with the public in the work setting and only occasional contact with co-workers and supervisors.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on November 13, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563). Upon reaching 50 years of age claimant was classified as an individual closely approaching advanced age.

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)..

10.     Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2013, the alleged onset date, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 576- 586).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 18, 2018. On March 22, 2019 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on April 16, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was born on November 13, 1964 and was 53 years old on the date that the ALJ issued his decision. Treating psychiatrist Dr. Ara Yeretsian, M.D. diagnosed Plaintiff with bipolar disorder in 2006 after Plaintiff demonstrated paranoid ideation, flight of ideas, and over reactivity. (AR 521-22.) Dr. Yeretsian continued to treat Plaintiff through the alleged disability onset date, at which time Plaintiff averred that she was unable to perform household chores, suffered anhedonia, and did not desire to socialize with others. (AR 545.) Dr. Yeretsian noted that Plaintiff frequently changed the subject of the discussion to anxiety-related topics, demonstrated a distressed and tearful affect, and manifested excited and apprehensive speech. (AR 546.) Dr. Yeretsian noted that Plaintiff suffered cyclical mood change that included periods of mania and periods of depression. *Id*. Dr. Yeretsian prescribed the antimanic medication Lithium. *Id*. At a subsequent medical appointment in March 2013, Dr. Yeretsian prescribed the bipolar disorder medication Lamictal and the antipsychotic Geodon. (AR 546.) In late March 2013, Dr. Yeretsian observed depressed mood and flat affect. (AR 547.) In April 2013, Plaintiff affirmed that she continued to lack motivation and that she spent a considerable portion of the day lying down. (AR 548.) She described poor concentration and attention that was interrupted by "…intrusive feelings of anxiety." (AR 549.) Dr. Yeretsian again noted depressed mood and flat affect. *Id*. At a subsequent April treatment session, Plaintiff manifested tearful affect. (AR 550.) Dr. Yeretsian opined that Plaintiff continued to suffer depression. *Id*. In late April 2013, Plaintiff admitted to paranoid ideation, decreased motivation, and anxiety. *Id*. Dr. Yeretsian observed depressed mood and flat and tearful affect. (AR 551.) He opined that she was very depressed and anxious. *Id*. In

June 2013, Plaintiff related to Dr. Yeretsian that she was shaky, upset, and edgy. (AR 553.) Dr. Yeretsian noted "clear-cut switches in disposition" and that Plaintiff was "into frank withdrawal and depression." (AR 554.) He prescribed the bipolar disorder medication Depakote. *Id.* She was tearful at a subsequent June 2013 treatment session and Dr. Yeretsian prescribed the antidepressant Wellbutrin. (AR 554-55.) Plaintiff admitted to hallucinations and poor sleep in July 2013. (AR 555.) Dr. Yeretsian noted that she changed subjects frequently, that her focus on the conversation was short, and that her demeanor ranged from calm to agitation. *Id*. At a subsequent July 2013 treatment session, Plaintiff acknowledged that she recently had experienced a single good day but that the rest of her days had all been bad due to her nerves. (AR 556.) Dr. Yeretsian noted that she manifested ideas of reference, that she changed subjects frequently because she was distracted by anxiety, that her focus on conversation was short, and that she demonstrated mood changes. *Id*. He opined that Plaintiff was not doing well. (AR 557.) Plaintiff was noted to be irritable in Dr. Yeretsian's waiting room in August 2013. *Id*. In December 2013, Dr. Yeretsian observed that Plaintiff was frustrated, tearful, and anxious. (AR 561.)

In January 2014, Dr. Yeretsian noted that Plaintiff sat forward in her chair, was tearful, and sighed frequently. (AR 562.) She admitted to paranoid ideation in March 2014. (AR 563.) Dr. Yeretsian prescribed the antipsychotic Latuda in place of Geodon. (AR 564.) In May 2014, Dr. Yeretsian noted labile mood and that Plaintiff burst into tears at times. *Id*. Plaintiff was again tearful during a June 2014 treatment session and Dr. Yeretsian noted that she was very scared of medications, highly somatic, depressed, and that she felt cognitively overwhelmed in conversation. (AR 565.) He prescribed the antianxiety medication Xanax. *Id.* In July 2014, she was tearful and manifested flat mood. (AR 566.) Dr. Yeretsian prescribed the antipsychotic

Abilify. *Id*. At that time, she began counseling with Joan Wolford, L.C.S.W. (AR 461.) She affirmed that she suffered from a lack of motivation to perform any task, as well as severe anxiety. *Id*.

Dr. Yeretsian opined that Plaintiff operated in high anxiety and that she continuously worried and doubted. (AR 567.) He noted that she was very depressed in August 2014 and prescribed the antidepressant Pristiq. (AR 567.) In late August 2014, he noted that Plaintiff manifested labile mood and tearful affect and that she appeared to be agitated and experienced difficulty maintaining composure. (AR 567-68.) In September 2014, she admitted paranoid ideation and fear of relapsing into psychosis to Ms. Wofford. (AR 459.) She reopened an account on Facebook which increased her paranoid thoughts. (AR 450.) She easily became mentally and physically exhausted. *Id*. Dr. Yeretsian observed labile mood that month. (AR 568.) Plaintiff informed Ms. Wofford that she became easily overwhelmed and suffered persistent lack of energy. (AR 449.) In late September 2014, Dr. Yeretsian opined that, since April 2014, he had made "mild inroads" with Plaintiff but that Plaintiff continued to suffer emotional lability, periodic hopeless depression, agitation, and delusional moods. (AR 569.) Despite the use of numerous psychotropic medications, Plaintiff's depression, impaired attention span, and tendency to focus on reducing her fears interfered with her ability to perform work tasks. *Id*.

In October 2014, Ms. Wofford noted that Plaintiff became tearful when she described her biggest fear as suffering another nervous breakdown. (AR 1401.) Plaintiff described impaired concentration and a desire to socially isolate. *Id*. She described frequent fatigue, a lack of motivation, and a need to lie down because she tired easily. (AR 1408.) She infrequently did laundry and showered only every three-to-four days. *Id*. In February and March 2015, she

experienced paranoid ideation. (AR 1413, 1415, 1417.)

Plaintiff began treating with psychiatrist Dr. Darnika Graham, M.D. in April 2015. (AR 1397-99.) Plaintiff described symptomatology that included fatigue, anhedonia, lack of motivation, hopelessness, and impaired focus. (AR 1397-99.) Dr. Graham observed depressed mood and diagnosed bipolar disorder. (AR 1399.) Plaintiff informed Ms. Wofford that she believed her mental health had deteriorated over time in April 2015. (AR 1424.) She continued to suffer poor attention and concentration. (AR 1428.) Dr. Graham prescribed the antidepressant Brintellix in July 2015 after Plaintiff continued to suffer poor motivation, interest, and focus. (AR 1506.) Dr. Graham noted depressed mood in August 2015. (AR 1509, 1511.) Plaintiff reported no improvement in mental health symptomatology in October 2015. (AR 1516, 1522.)

In January 2016, she suffered a panic attack that prompted her to seek treatment at the emergency department. (AR 1531.) She resumed psychotherapy with Ms. Wofford in February 2016 at which time she endorsed poor concentration and low energy. (AR 1436.) She felt overwhelmed when she attempted to perform household chores. (AR 1439.) She suffered illogical ideation and racing thoughts throughout spring and summer 2016. (AR 1446, 1452, 1540.)

Dr. Graham observed tearful affect and depressed mood in September 2016. (AR 1061.) Plaintiff suffered a manic episode in October 2016. (AR 1466.) She was tearful when she met with Ms. Wofford in November 2016. (AR 1471.) Dr. Graham's January 2017 mental status examination reflected depressed mood, tearful and dysphoric affect, and poor memory. (AR 1073.) Plaintiff suffered forgetfulness and experienced difficulty finding words in March 2017. (AR 1479.) She noted impairment in short-term memory in June 2017. (AR 1483.) Dr. Graham noted that Plaintiff's mood was terrible in August 2017. (AR 1583.)

Psychiatrist Dr. Rana Embar, M.D., began treating Plaintiff in October 2017, at which time she observed that Plaintiff demonstrated anxious and tearful affect and depressed mood. (AR 1585.) That month, Ms. Wofford noted anxious and depressed mood and that Plaintiff appeared to be disheveled and unkempt. (AR 1353.) In November 2017, Plaintiff was unable to perform activities of daily living due to absent motivation. (AR 1490.) Dr. Embar again affirmed that Plaintiff presented with tearful and anxious affect in December 2017. (AR 1587.) Plaintiff's anxiety and the frequency with which she suffered panic attacks increased in January 2018. (AR 1492.) She no longer followed through with medical appointments. *Id*. Dr. Embar observed anxious affect and depressed mood in February 2018. (AR 1590-91.)

Dr. Yeretsian submitted an assessment of Plaintiff's mental functional capacity (AR 382-87) in which he opined that Plaintiff demonstrated frequent deficits in the ability to maintain regular attendance and to be punctual within usual strict tolerances (AR 384), to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, to travel in unfamiliar places, and to use public transportation. (AR 385.) Plaintiff found speed, precision, complexity, deadlines, work within a schedule, decision making, exercising independent judgment, completing tasks, working with others, interacting with the public and supervisors, accepting criticism, working under supervision, remaining at work for a full day, and fear of failure to be stressful. (AR 386.) Plaintiff's impairments would cause her to be absent from work more than four days each month. *Id*.

Dr. Graham submitted an assessment of Plaintiff's mental functional capacity (AR 980-85) in which she opined that Plaintiff was unable to meet competitive standards with regard to completing a normal workday or workweek without interruptions from psychologically- based

symptoms, to responding appropriately to changes in a work routine, to dealing with normal work stress (AR 982), and to dealing with the stress of skilled and semiskilled work. (AR 983.) Plaintiff found speed, precision, complexity, deadlines, work within a schedule, decision making, exercising independent judgment, completing tasks, working with others, interacting with the public and supervisors, accepting criticism, working under supervision, remaining at work for a full day, and getting to work regularly to be stressful. (AR 984.) Her impairments would cause her to be absent from work more than four days each month. *Id.*

The ALJ questioned the VE about the availability of jobs to a hypothetical individual who retained Plaintiff's residual functional capacity (RFC). (AR 634-35.) The VE testified that, while the hypothetical individual could not perform Plaintiff's past relevant work (AR 635), she retained the RFC to perform the jobs of office helper, mail clerk, and hand packager. (AR 636.) If the individual was absent from work more than ten-to-twelve days each year or was off-task for more than 15 percent of the workday, she would be precluded from competitive employment. (AR 637.)

As noted above, the ALJ made the following findings: Plaintiff met the insured status requirement through September 30, 2018 (AR 576); to be eligible for Disability Insurance Benefits, she needed to establish that she became disabled before this date. She suffered from medically determinable severe impairments of bipolar disorder, anxiety, degenerative disc disease of the cervical spine, and obesity. *Id.* Her mental impairments produced moderate restrictions in understanding, remembering, and applying information; social functioning, concentration, persistence, or pace; and adapting or managing oneself. (AR 578-79.) She retained the RFC to perform work at the light exertional level but could never climb ladders, ropes or scaffolds; could

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; needed to avoid all exposure to unprotected heights; needed to avoid concentrated exposure to dangerous machinery; could perform simple and routine work; could perform work at an average pace with no fast-paced production requirements or hourly or other periodic production quotas; and could tolerate occasional contact with the public, coworkers, and supervisors. (AR 580.) The ALJ held that while Plaintiff's impairments could have been expected to produce the symptoms that she alleged, any statements that addressed the intensity, persistence, or limiting effects of those symptoms were not entirely consistent with evidence. (AR 581.) The psychological expert's medical opinion merited significant weight (AR 584), Dr. Graham's medical opinion merited some weight, Dr. Embar did not provide treatment notes that supported her opinion that Plaintiff would be absent from work four days each month (AR 582), and Dr. Yeretsian's medical opinion was not supported by his treatment notes. (AR 583.) While Plaintiff was unable to perform any past relevant work (AR 584), she retained the RFC to perform the jobs of office helper, mail clerk, and hand packager. (AR 586.)

In support of remand, Plaintiff first argues that the ALJ erred in weighing medical opinion evidence. More specifically, Plaintiff claims that the ALJ erred in rejecting medical opinion evidence provided by treating psychiatrists Drs. Yeretsian and Graham. Plaintiff argues that the ALJ did not explicitly state the weight that Dr. Yeretsian's medical opinion merited and found that Dr. Graham's opinion merited only some weight. (AR 582-83.) The ALJ found that Dr. Yeretsian's medical opinions were not supported by his treatment notes and that his clinical observations included comments about Plaintiff's need to look for work and her lack of memory impairment. (AR 583.) In finding that Dr. Graham's medical opinion merited only some weight,

the ALJ found that Plaintiff's bipolar disorder did limit Plaintiff's mental functional capacity but not to the extent that Dr. Graham believed and that, contrary to Dr. Graham's opinion, Plaintiff was able to socialize. (AR 582.)

An ALJ is required to weigh all medical opinion evidence pursuant to the "checklist of factors" that 20 C.F.R. § 404.1527(c) enumerates. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The checklist requires an ALJ "...to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). An ALJ's failure to weigh medical opinion evidence pursuant to the factors that the checklist provides mandates remand. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). An ALJ must supply sound reasoning whenever he declines to accord significant weight to a treating physician's medical opinion. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).

In the present case, the ALJ did not acknowledge that either Dr. Yeretsian or Dr. Graham was a treating medical provider. A medical opinion that a treating physician provides presumably merits significant weight, for a treating physician presumably possesses sufficient knowledge of a claimant's impairments to allow the physician to paint a longitudinal portrait of how a claimant's impairments restricts her ability to perform work tasks. 20 C.F.R. § 404.1527(c)(2). Plaintiff argues that in failing to acknowledge that Drs. Yeretsian and Graham were treating psychiatrists, the ALJ failed to explain why he did not begin weighing their medical opinions with the presumption that, as treating physicians, Drs. Yeretsian and Graham's medical opinions merited significant weight. Plaintiff points out that the ALJ failed to explain how he considered Drs. Yeretsian and Graham's roles as examining medical sources. Drs. Yeretsian (AR 549) and

Graham performed mental status examinations during treatment sessions with Plaintiff. (AR 1061.) Generally, medical opinions that examining physicians provide merit greater weight than opinions that non-examining physicians provide. 20 C.F.R. § 404.1527(c)(1). The ALJ did not explain why Drs. Yeretsian and Graham's role as examining physicians did not persuade the ALJ to accord greater, rather than less, weight to their medical opinions. Dr. Yeretsian began treating Plaintiff in 2006 (AR 541) and continued treating her through 2014. (AR 570.) Between the alleged disability onset date and the date that he authored his opinion, Dr. Yeretsian treated Plaintiff on 32 occasions. (AR 545-67.) Dr. Graham began treating Plaintiff in April 2015 (AR 1397-99) and continued treating her through September 2017. (AR 1582-84.) Between April 2015 and January 2017, when she authored her medical opinion, Dr. Graham treated Plaintiff on 27 occasions[2].

The longer that a physician maintains a treatment relationship with a patient and the more frequently a physician treats a patient, the greater weight that physician's medical opinion merits. 20 C.F.R. § 404.1527(c)(2)(i). While the ALJ noted that Dr. Yeretsian treated Plaintiff from 2006 through 2014 (AR 583) and that Dr. Graham treated Plaintiff on a monthly basis (AR 582), the ALJ did not explain how either the length of the treatment relationships that the psychiatrists maintained with Plaintiff or the frequency with which the psychiatrist treated Plaintiff factored into the weight that he ultimately accorded their medical opinion evidence. The ALJ did not explain why he did not accord these medical opinions greater, rather than less, weight, given that they treated Plaintiff on a regular basis and would have been uniquely situated, based on their

---

[2]  AR 1397-99, 1500-01, 1502, 03, 1504-05, 1506-07, 1508-09, 1510-11, 1513-14, 1516-17, 1519-20, 1522-23, 1525-26, 1528-29, 1531-32, 1534-35, 1537-38, 1540-42, 1543-45, 1546-48, 1549-51, 1552-54, 1555-57, 1558-60, 1561-63, 1564-66, 1567-69, 1570-72.

familiarity with Plaintiff's mental impairments, to author opinions of how those impairments limited Plaintiff's mental capacity to perform work tasks. Furthermore, the ALJ failed to explain if or how he considered that no medical source who treated Plaintiff on more occasions than either Dr. Yeretsian or Dr. Graham provided an opinion of Plaintiff's mental functional capacity.

Plaintiff argues that, contrary to the ALJ's finding, Drs. Yeretsian and Graham's medical opinions were supported by their objective medical findings. Dr. Yeretsian's mental status examinations reflected that Plaintiff manifested outward anxiety[3], fast, excited and apprehensive speech (AR 546); distressed (AR 546) or flat affect (AR 547-48, 549-52); tearful affect[4]; depressed mood (AR 547-48, 549-51); serious behavior (AR 546-47, 549-52); agitation (AR 555, 567); and impaired focus. (AR 556.) Dr. Yeretsian further chronicled Plaintiff's difficulty socializing (AR 545, 554), paranoid ideation[5], impaired sleep and fatigue[6], anhedonia and difficulty performing even basic activities of daily living[7]. Dr. Graham's treatment notes reflected depressed mood[8], tearful affect (AR 1501, 1559, 1570), and poor memory. (AR 1570.) Dr.

---

[3] AR 551, 555-56, 561-62, 565, 567

[4] AR 550-51, 554, 557-58, 561-62, 564-65, 567.

[5] AR 546, 552, 555, 561, 564, 567.

[6] AR 547-51, 553-55, 562, 565-66.

[7] AR 547, 549-51, 554, 557, 560-63.

[8] AR 1399, 1501, 1509, 1511, 1514, 1517, 1520, 1523, 1526 ,1529, 1541, 1556, 1559, 1570.

Graham further detailed Plaintiff's anhedonia[9], poor motivation and lack of energy[10], and impaired focus[11].

The more the evidence supports a physician's medical opinion, the greater weight that opinion merits. 20 C.F.R. § 404.1527(c)(3). Here, however, the ALJ failed to explain how Dr. Yeretsian's clinical observations that reflected anxiety, apprehensive speech, flat or tearful affect, depressed mood, agitation, and impaired focus failed to support his opinion that Plaintiff's ability to maintain attendance and to be punctual when working would be frequently compromised. The ALJ failed to explain how Dr. Yeretsian's consideration of Plaintiff's paranoid ideation, difficulty socializing, impaired sleep, anhedonia, and difficulty performing activities of daily living failed to support his conclusions that addressed Plaintiff's impaired ability to maintain socially appropriate behavior or to adhere to basic standards of neatness and cleanliness. Similarly, the ALJ failed to explain how Dr. Graham's treatment notes that indicated depressed mood, tearful affect, and poor memory as well as her consideration of Plaintiff's description of her diminished energy and focus as well as anhedonia did not support her opinion that Plaintiff could not meet competitive standards with regard to completing a workday or workweek without interruption from psychologically-based symptoms or with regard to responding to work stress or to changes in the workplace routine.

The ALJ also failed to explain if or how he considered the consistency between Drs.

[9] AR 1500, 1502, 1504, 1506, 1508, 1522 1513, 1516, 1519, 1525, 1528, 1540, 1549, 1558, 1561, 1564, 1567, 1570.

[10] AR 1500, 1502, 1506, 1508, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1537, 1540, 1549, 1552, 1555, 1558, 1561, 1564, 1567, 1570

[11] AR 1502, 1504, 1506, 1508, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1558, 1561.

Yeretsian and Graham's medical opinions and other medical evidence of record. Treating psychiatrist Dr. Embar observed depressed mood and anxious and tearful affect. (AR 1585, 1587, 1590.) Plaintiff related paranoid ideation, difficulty mustering motivation to perform basic chores, and impaired concentration to Dr. Embar. (AR 1585.) Plaintiff regularly affirmed fatigue[12], low energy and lack of motivation to complete tasks[13], difficulty interacting with others (AR 459, 1401, 1424, 1456) paranoid ideation[14], anxiety[15] and impaired concentration (AR 1401, 1428, 1468) to Ms. Wofford during therapy sessions. Ms. Wofford noted that, at times, Plaintiff was tearful[16] and unkempt and disheveled. (AR 1353.) The more consistent that a medical opinion is with other evidence of record, the greater weight that opinion merits. 20 C.F.R § 404.1527(c)(4). Again, the ALJ failed to explain why Drs. Yeretsian and Graham's medical opinions did not merit greater, rather than less, weight where those opinions were consistent with another treating psychiatrist's examination findings as well as reports from Plaintiff's therapist. Both Dr. Embar's examination findings and Ms. Wofford's therapy session notes detailed that, despite use of psychotropic medication, Plaintiff continued to suffer significant symptomatology that would have precluded her from sustaining full-time employment. The ALJ did not explain why, given this additional evidence that corroborated the limitations that Drs. Yeretsian and Graham

_____

[12]  AR 450, 1413, 1437, 1441, 1448, 1454, 1462, 1464, 1488, 1490, 1492

[13]  AR 449, 459, 1403, 1405, 1408, 1413, 1415, 1422, 1426, 1430, 1436, 1437, 1439, 1441, 1454, 1456, 1460, 1464, 1466, 1468, 1471, 1473, 1477, 1479, 1481, 1485, 1488, 1490, 1492, 1494.

[14]  AR 450, 459, 1401, 1405, 1413, 1415, 1422, 1430, 1441, 1452.

[15]  AR 461, 1417, 1428, 1430, 1436, 1437, 1446, 1454, 1460, 1471, 1481, 1490, 1494.

[16]  AR 1401, 1441, 1452, 1464, 1471.

proposed, their medical opinions did not merit greater, rather than less, weight.

Finally, the ALJ failed to explain if or how he considered that both Drs. Yeretsian and Graham were specialists. Dr. Yeretsian and Graham were psychiatrists. As psychiatrists, Drs. Yeretsian and Graham specialized in "...diagnosis, treatment and prevention of mental, emotional and behavioral disorders." A medical specialist's opinion merits greater weight than a non-specialist's medical opinion merits. 20 C.F.R. § 404.1527(c). The ALJ failed to explain why, as specialists who focused on the diagnosis and treatment of the very impairments from which Plaintiff suffered, Drs. Yeretsian and Graham's medical opinions did not merit greater, rather than less, weight. Furthermore, the Seventh Circuit has held that an ALJ errs where he accords greater weight to a non-examining psychologist's medical opinion than to a treating psychiatrist's medical opinion. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Plaintiff argues that the ALJ herein committed this same error, as the ALJ rejected opinions of psychiatrists who, together, treated Plaintiff on nearly 60 occasions in favor of the non-examining medical expert's opinion which was predicated solely on a review of Plaintiff's medical history. (AR 584.) While the ALJ found that the medical expert was able to review the entire record and referenced evidence to support her opinion, the ALJ did not explain how, given the factors that he was required to consider per 20 C.F.R. § 404.1527(c), this non-examining source's opinion merited greater weight than treating psychiatrists' medical opinions merited.

Plaintiff argues that the ALJ failed to provide sound reasoning in declining to accord significant weight to Drs. Yeretsian and Graham's medical opinions. In rejecting Dr. Yeretsian's medical opinion, the ALJ noted that Dr. Yeretsian's medical opinion was not supported by his treatment notes, for these treatment notes contained few clinical findings. (AR 583.) A review of

these treatment notes, however, contradicts the ALJ's conclusion. Dr. Yeretsian's treatment notes reflected that Plaintiff demonstrated outward anxiety[17], fast, excited and apprehensive speech (AR 546); distressed (AR 546), flat (AR 547-48, 549-52), or tearful affect[18]; depressed mood (AR 547-48, 549-51); serious behavior (AR 546-47, 549-52); agitation (AR 555, 567); and impaired focus. (AR 556.) The ALJ failed to explain how these observations, conducted as part of formal mental status examinations, did not constitute clinical findings that supported Dr. Yeretsian's medical opinion. An ALJ's mischaracterization of the record compromises an ALJ's decision. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003).

The ALJ further found that Dr. Yeretsian's treatment notes contained content that suggested that he believed Plaintiff should look for work, that Plaintiff maintained composure when she discussed unpleasant topics, and that Plaintiff's memory, while not formally tested, was not problematic. (AR 583.) Plaintiff contends that the ALJ cited Dr. Yeretsian's statements about looking for work out of the context in which those statements were made. Plaintiff notes that Dr. Yeretsian stated that Plaintiff needed to look for other work in April and May 2013 because he believed that she was incapable of performing her past relevant work as a school bus driver. (AR 551-52.) Plaintiff argues that this statement suggested only that Dr. Yeretsian did not believe, based on her level of impairment, that she could safely operate a school bus and that if she desired to work she should have looked into another field. Moreover, Dr. Yeretsian authored these statements well over a year before he drafted his medical opinion. Dr. Yeretsian did not discuss Plaintiff's ability to work in his treatment notes subsequent to spring 2013 and reasonably

---

[17]  AR 551, 555-56, 561-62, 565, 567.

[18]  AR 550-51, 554, 557-58, 561-62, 564-65, 567.

determined that, based on the limited progress that she made, which was reflected in notes that stated that Plaintiff was not progressing well (AR 557-58), her ability to function was limited (AR 562), she was fragile (AR 563), and she was highly anxious. (AR 565, 567.) The ALJ failed to explain how these statements were compatible with what the ALJ concluded was an endorsement of Plaintiff's ability to work.

Plaintiff contends that the ALJ's reliance on Dr. Yeretsian's observation that Plaintiff could maintain composure when she discussed unpleasant topics was similarly misplaced. The ALJ failed to explain how this single observation contradicted Dr. Yeretsian's medical opinion. Dr. Yeretsian's medical opinion addressed Plaintiff's ability to perform work tasks in a competitive work environment on a full-time basis and not her ability to discuss topics that may have been uncomfortable to her when she was in a therapeutic environment. The ALJ was required to construct a logical and accurate bridge from evidence to his conclusion. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). Here, the ALJ failed to explain how Plaintiff's ability to discuss unpleasant topics contradicted Dr. Yeretsian's opinion that Plaintiff's impairments would frequently interfere with her workplace attendance and her ability to maintain socially appropriate behavior in the workplace.

Plaintiff also argues that the ALJ's reliance on Dr. Yeretsian's observation, that despite formal testing Plaintiff's memory did not present a psychiatric problem, amounted to the very sort of independent medical conclusion that an ALJ may not make. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). The ALJ failed to explain the relevance of this particular observation. The ALJ failed to explain how, even assuming that Plaintiff demonstrated intact memory, this single finding obviated Dr. Yeretsian's opinion where Dr. Yeretsian's treatment records reflected that

Plaintiff was frequently depressed, agitated or anxious; presented with tearful or distressed affect; and manifested impaired focus.

Plaintiff argues that the ALJ failed to provide sound reasoning when he rejected Dr. Graham's medical opinion. The ALJ found that Dr. Graham's medical opinion merited only some weight, for Plaintiff's ability to engage in social interaction, such as visiting family and friends and going to the gym, indicated that she was not as functionally limited as Dr. Graham found her to be. (AR 582.) Dr. Graham specifically evaluated Plaintiff's capacity to perform work tasks and to function in a competitive workplace. It is error for an ALJ to conflate activities of daily living, such as interacting with friends and family and exercising at a gym, with the ability to perform work tasks. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Plaintiff did not visit family and friends or exercise at a gym five days each week for eight hours each day. An individual such as Plaintiff who suffers from a mental illness and who receives treatment in the form of powerful psychotropic medication is likely to experience both good and bad days. *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Plaintiff could have visited family and the gym on days when she felt that she had energy and motivation. Plaintiff could not have been as selective if she was employed, and if she experienced as many good days as she experienced bad days, she would be unemployable. *Id.* Plaintiff argues that the ALJ again failed to construct a logical and accurate bridge from evidence of Plaintiff's social functioning to his conclusion that Dr. Graham's opinion that Plaintiff could not meet competitive standards with regard to completing a workday or workweek without interruption from psychologically based symptoms was somehow unsupported.   In response, the Commissioner argues that the ALJ committed no error in rejecting treating psychiatrists Drs. Yeretsian and Graham's medical opinions. The Commissioner

maintains that the ALJ was not required to explain how he weighed the medical opinions pursuant to each of the 20 C.F.R. § 404.1527(c) regulatory factors and that it sufficed that the ALJ was aware of and considered the factors. The Commissioner asserts that the ALJ did not need to explicitly consider all evidence when he determined if the medical opinions were consistent with other evidence and was only required to not ignore entire lines of evidence. The Commissioner further argues that the ALJ reasonably considered inconsistencies between Dr. Yeretsian's medical opinion and Dr. Yeretsian's treatment notes and found that Dr. Yeretsian did not record clinical findings. The Commissioner further contends that the ALJ properly dismissed Dr. Graham's opinion by noting that Plaintiff engaged in activities that were inconsistent with Dr. Graham's opinion and that this analysis was sufficient.  Plaintiff, however, argues that the Commissioner's argument is a misstatement of applicable law and simplifies the duties that the ALJ was required to execute when the ALJ adjudicated Plaintiff's application for Disability Insurance Benefits.

As noted earlier, an ALJ must weigh all medical opinion evidence pursuant to the mandatory "checklist of factors" that 20 C.F.R. § 404.1527(c) enumerates. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). An ALJ is required to explain how he considers "...the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citation omitted). An ALJ's failure to employ the checklist of factors when weighing medical opinion evidence mandates remand. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). An ALJ must provide a sound explanation whenever he declines to accord significant weight to a treating physician's medical

opinion. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).

In support of her contention that an ALJ only needs to be aware of the factors that the checklist provides the Commissioner cites two unpublished, non-precedential Seventh Circuit dispositions and ignores that the Seventh Circuit has held, in precedential matters, that an ALJ's failure to explain how he considered the factors that the checklist details warrants remand. *Gerstner*, 879 F.3d at 263. *Accord Plessinger v. Berryhill*, 900 F.3d 909, 914-15 (7th Cir. 2018); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018); *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

The Commissioner contends that the ALJ did consider that Dr. Yeretsian treated Plaintiff since 2006 and even quotes the appropriate regulation that dictates that an ALJ should give greater weight to a physician's opinion where that physician has an extensive treating relationship with a claimant. Yet the Commissioner, like the ALJ, fails to explain why the ALJ did not, therefore, accord greater, rather than less weight to Dr. Yeretsian's medical opinion, given that Dr. Yeretsian had treated Plaintiff for eight years by the date that he authored his opinion. The Commissioner, like the ALJ, is silent as to why the 32 occasions on which Dr. Yeretsian treated Plaintiff between the alleged disability onset date and the date on which he drafted his opinion did not persuade the ALJ to accord greater, rather than less, weight to Dr. Yeretsian's opinion, where no physician who treated Plaintiff on more occasions provided an opinion of her capacity to perform work tasks. 20 C.F.R. § 404.1527(C)(2)(i) (greater weight accorded to medical opinion of physician who has treated claimant on numerous occasions). The Commissioner, like the ALJ

fails to explain why, as a treating and as an examining physician, these factors did not persuade the ALJ to accord greater, rather than less, weight to Dr. Yeretsian's opinion, where the checklist instructs an ALJ to accord greater weight to a physician's opinion where that physician has actually examined and treated a claimant. 20 C.F.R. § 404.1527(c)(1)-(2).

The Commissioner argues that the ALJ committed no error in finding that Dr. Yeretsian's treatment records reflected minimal clinical findings and largely discussed Plaintiff's medications and her self-reported symptoms and events. However, the Commissioner's argument ignores that Dr. Yeretsian's treatment notes specifically referenced Plaintiff's outward anxiety[19], fast, excited and apprehensive speech (AR 546); distressed (AR 546) or flat affect (AR 547-48, 549-52); tearful affect[20]; depressed mood (AR 547-48, 549-51); serious behavior (AR 546-47, 549-52); agitation (AR 555, 567); and impaired focus. (AR 556.) The Commissioner ignores these clinical findings and, contrary to the Commissioner's assertion, the ALJ's decision to ignore them and to selectively cite from the record mischaracterized Dr. Yeretsian's treatment records. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003). The Commissioner, who, like the ALJ, possesses no training in the evaluation of mental impairments, cites no evidence in support of what additional clinical or laboratory findings Dr. Yeretsian was required to detail. Additionally, while Dr. Yeretsian's treatment notes reflect Plaintiff's difficulty socializing (AR 545, 554), paranoid

---

[19]   AR 551, 555-56, 561-62, 565, 567.

[20]   AR 550-51, 554, 557-58, 561-62, 564-65, 567.

ideation[21], impaired sleep and fatigue[22], anhedonia, and struggles with activities of daily living[23], a psychiatrist's assessment of a claimant's mental capacity to perform work tasks is largely based on what a claimant discusses with her psychiatrist. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Dr. Yeretsian did not err in considering Plaintiff's subjective description of her symptomatology and the ALJ did not explain why the uncontradicted clinical findings listed above, coupled with Plaintiff's description of how her mental impairments affected her ability to function did not provide sufficient support for Dr. Yeretsian's medical opinion and why that medical opinion did not, therefore, merit greater, rather than less weight. 20 C.F.R. § 404.1527(c)(3).

The Commissioner maintains that the ALJ reasonably found that Dr. Yeretsian's medical opinion was inconsistent with evidence because, while Dr. Yeretsian opined that Plaintiff suffered significant restrictions that would preclude her ability from maintaining employment, Dr. Yeretsian, in a treatment note, observed that Plaintiff maintained her "cool" when she discussed unpleasant subjects. However, the Commissioner, like the ALJ, fails to explain how Plaintiff's ability to maintain composure when she discussed difficult experiences or topics with a psychiatrist in a therapeutic setting reflected her ability to perform work tasks on a full-time basis in a competitive workplace. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (ALJ must construct logical and accurate bridge from evidence to conclusion). Moreover, it constituted an impermissible independent medical finding. *Lambert*, 896 F.3d at 874.

---

[21] AR 546, 552, 555, 561, 564, 567.

[22] AR 547-51, 553-55, 562, 565-66.

[23] AR 547, 549-51, 554, 557, 560-63.

The Commissioner further asserts that the ALJ reasonably relied on Dr. Yeretsian's observation that Plaintiff did not suffer a memory impairment and that he believed, in May 2013, that Plaintiff should look for other work. While the Commissioner contends that the ALJ reasonably relied on a single note from 2013 that reflected that Dr. Yeretsian thought Plaintiff should look for work to obviate his later opinion that she could not perform functions that were required to sustain employment, this reliance on a single treatment record not only constituted impermissible selective recitation of the record, but as noted earlier, it takes Dr. Yeretsian's observation out of context. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (ALJ may not selectively cite from record to support finding of non-disability). As Plaintiff points out, Dr. Yeretsian's comment that Plaintiff should look for other work should be read as his admonition that, if she needed to continue to work, she should not perform a job where the safety of children was her primary responsibility. (AR 552.)

With regard to the actual consistency between Dr. Yeretsian's medical opinion and other evidence of record the Commissioner fails to explain why the consistency between Dr. Yeretsian's medical opinion and Drs. Graham and Embar's medical opinions as well as Ms. Wofford's treatment records did not result in the ALJ according greater, rather than less, weight to Dr. Yeretsian's medical opinion. The more consistent that a medical opinion is with other evidence of record, the greater weight that opinion merits. 20 C.F.R. § 404.1527(c)(4). The Commissioner notes only that the ALJ found that Dr. Yeretsian's medical opinion was consistent with the state agency psychological consultants' conclusions that Plaintiff would suffer moderate limitations in maintaining attention and concentration for extended periods. The Commissioner's failure to address Plaintiff's argument that the consistency between Dr. Yeretsian's medical

opinion and other evidence of record that the Commissioner and the ALJ ignore suggests that the

Commissioner has no appropriate response. *See, e.g., Herrmann v. Berryhill*, 2017 WL 6523931,

*11 (N.D. Ind. 2017) (Plaintiff's arguments that Commissioner fails to address are unrefuted).

The Commissioner briefly addresses treating psychiatrist Dr. Graham and contends that

the ALJ committed no error in weighing Dr. Graham's medical opinion, for the ALJ

acknowledged that Dr. Graham treated Plaintiff and was a psychiatrist. The Commissioner fails to

explain, however, how this very basic recitation constitutes the kind of meaningful analysis an

ALJ must provide in his decision. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must

provide sufficient detail in decision to permit Court to conduct meaningful judicial review and to

trace the path of ALJ's reasoning). Here, the Commissioner fails to explain why, if the ALJ

actually weighed Dr. Graham's opinion pursuant to the checklist of factors, Dr. Graham's role as

a treating physician and as a specialist did not convince the ALJ to accord the opinion greater,

rather than less, weight, for a treating physician's medical opinion merits greater weight than a

non-treating physician's medical opinion merits and a specialist's medical opinion merits greater

weight than a non-specialist's medical opinion merits. 20 C.F.R. § 404.1527(c)(2);

404.1527(c)(5). The Commissioner again ignores the evidence that supported Dr. Graham's

medical opinion and myopically focuses on what she characterizes as inconsistencies between Dr.

Graham's opinion that Plaintiff suffered limitations in social interaction and Plaintiff's attendance

at a wedding, visitation with family and friends, and membership at a gym.  Dr. Graham

specifically provided an opinion that addressed Plaintiff's ability to interact with others in a

workplace setting. (AR 983.) The Commissioner fails to explain how Plaintiff's one-time

attendance at a wedding, her ability to interact with friends and family, or her ability to exercise at

a gym revealed anything about Plaintiff's ability to interact with others while coping with the stressors of employment.

The Seventh Circuit has cautioned ALJ's about equating activities of daily living, such as interacting with friends and attending social events with work activities. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Also, while the Commissioner contends that the ALJ incorporated work-related functional limitations by limiting Plaintiff to occasional contact with the public, coworkers, and supervisors, neither the Commissioner nor the ALJ explain how such limitations actually reflected Dr. Graham's opinion, for Dr. Graham never opined that Plaintiff could tolerate occasional contact with the public, coworkers, and supervisors. *Spicher*, 898 F.3d at 757.

Accordingly as the extensive analysis above makes abundantly clear, remand is required on the issue of the proper weight to assign to Plaintiff's treating psychiatrists.

Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's mental RFC. Specifically, Plaintiff argues that the ALJ erred in failing to include moderate restrictions in concentration, persistence, or pace in his assessment of the Plaintiff's RFC. The ALJ found that Plaintiff suffered from medically determinable severe impairments of bipolar disorder and anxiety (AR 576) and that these impairments produced moderate restrictions in concentration, persistence, or pace. (AR 579.) When the ALJ assessed Plaintiff's RFC, however, the ALJ omitted moderate restrictions in concentration, persistence, or pace and instead found only that Plaintiff could perform simple and routine work and that Plaintiff could perform work at an average pace. (AR 580.)

An ALJ's assessment of a claimant's RFC is his determination of the maximum exertional and non-exertional work-related effort that a claimant can sustain despite the functional

restrictions that her impairments produce. SSR 96-8p. An ALJ must include all work-related functional restrictions that evidence supports in his assessment of a claimant's RFC. *Id. Accord Stage*, 812 F.3d at 1125. An ALJ must include moderate restrictions in concentration, persistence, or pace in his assessment of a claimant's RFC. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2002). The Seventh Circuit has held that an ALJ errs where he finds that a claimant suffers moderate restrictions in concentration, persistence, and pace but omits those particular limitations from his assessment of a claimant's RFC and instead restricts a claimant with moderately restricted concentration, persistence, or pace to work that involves simple, routine, or repetitive tasks. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (reiterating that restricting claimant with moderate deficiencies in concentration, persistence, or pace to work that involves simple tasks insufficiently addresses those deficiencies); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) restricting claimant to simple, routine work does not "...adequately capture[] temperamental deficiencies and limitations in concentration, persistence, and pace"); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (limiting claimant to simple tasks did not account for restrictions in concentration, persistence, or pace); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (RFC assessment that provided that claimant could perform simple, unskilled work did not sufficiently address deficiencies in concentration, persistence, or pace).

An ALJ must incorporate all functional restrictions that he includes in his assessment of a claimant's RFC into the hypothetical question that he asks the VE. *Moreno*, 882 F.3d at 730; *Varga v. Colvin*, 794 F.3d 809, 813-14 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014); *O'Connor- Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010). Plaintiff in the present case argues that by limiting Plaintiff to simple and routine work, the ALJ addressed only

the complexity of tasks that Plaintiff could perform. The ALJ failed to contemplate that Plaintiff may have been unable to perform even simple and routine tasks with the persistence or pace that employers require. An employer may require an ALJ to "stick with the job" once she has been trained to perform it. *Kasarsky*, 335 F.3d at 544. *Accord* SSR 85-15 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job...").

   The ALJ failed to explain how he determined that Plaintiff could have maintained concentration, persistence, or pace to perform even simple, routine work where evidence reflected that Plaintiff struggled with motivation to attend to even basic activities of daily living[24]. The ALJ failed to explain how, despite evidence of impaired focus, Plaintiff could have remained on-task for a sufficient percentage of the workday to complete assigned tasks, even if those tasks were simple or routine[25]. The ALJ failed to explain how limiting Plaintiff to work that was performed at an average pace accounted for moderate restrictions in concentration, persistence, or pace. The Seventh Circuit has held that an ALJ errs where he limits a claimant who suffers moderate restrictions in concentration, persistence, or pace to work that is performed at an average pace and that is free of fast-pace production requirements. *Varga*, 794 F.3d at 815. The Court held that such a limitation did not fully account for a claimant's impairment in concentration, persistence,

---

   [24]  AR 449, 459, 1403, 1405, 1408, 1413, 1415, 1422, 1426, 1430, 1436, 1437, 1439, 1441, 1454, 1456, 1460, 1464, 1466, 1468, 1471, 1473, 1477, 1479, 1481, 1485, 1488, 1490, 1492, 1494, 1500, 1502, 1506, 1508, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1537, 1540, 1549, 1552, 1555, 1558, 1561, 1564, 1567, 1570.

   [25]  AR 556, 1502, 1504, 1506, 1508, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1558, 1561.

and pace and that, absent a definition of "fast-paced production" a VE could not determine if a claimant with moderate restrictions in concentration, persistence, or pace could maintain the pace that the ALJ proposes. *Id.*

Plaintiff also argues that the ALJ erred in failing to identify the evidentiary basis that supported the limitations in social functioning that he included in his assessment of Plaintiff's RFC. The ALJ found that Plaintiff suffered mild-to-moderate limitations in interacting with others and moderate restrictions in social functioning. (AR 579.) When the ALJ assessed Plaintiff's RFC, he found that Plaintiff could occasionally interact with the public, coworkers, and supervisors. (AR 580.) The ALJ failed to identify evidence that supported these functional restrictions and failed to explain how evidence did not support a more restrictive assessment of Plaintiff's social functioning. Plaintiff maintains that the ALJ's error in failing to include moderate restrictions in concentration, persistence, or pace in his assessment of Plaintiff's RFC and the hypothetical question was not harmless, for, had the ALJ apprised the VE that the hypothetical individual suffered moderate restrictions in concentration, persistence, or pace, the VE may have testified that the individual would have been precluded from competitive employment. *Moreno*, 882 F.3d at 730; *Varga*, 794 F.3d at 813-14; *Yurt*, 758 F.3d at 857-58; *O'Connor-Spinner*, 627 F.3d at 619-20.

An ALJ must support his assessment of a claimant's RFC with evidence, either objective or subjective. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). An ALJ's failure to identify the evidentiary basis that supports the limitations that he includes in his assessment of a claimant's RFC mandates remand. *Briscoe*, 425 F.3d at 352. Once an ALJ determines that none of the available medical opinion evidence adequately accounts for the totality of a claimant's functional

restrictions, he faces an "evidentiary deficit" that he may not fill with his lay understanding of how a claimant's medically determinable impairments limit her ability to perform work tasks. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

As noted, the ALJ rejected the opinions of Plaintiff's treating psychiatrists and accorded significant weight to the medical expert's medical opinion, but ultimately disagreed with the medical expert's conclusion that Plaintiff suffered only mild restrictions in social functioning and that she had no limitations in interacting with the public, coworkers, or supervisors. (AR 584.) Plaintiff argues that once the ALJ rejected each of the available medical opinions, the ALJ faced an "evidentiary deficit" that he was not permitted to fill with lay medical speculation. The ALJ could have relied on Plaintiff's subjective allegations to form the evidentiary basis of his assessment of her limitations in social functioning, but the ALJ declined to do so, having found that those allegations were not entirely consistent with evidence. (AR 581.) The ALJ was then left without evidence to support his determination that Plaintiff could tolerate occasional contact with the public, coworkers, and supervisors. Objective medical evidence reflected that Plaintiff presented with distressed (AR 546), flat (AR 547-48, 549-52), or tearful affect[26]. She was anxious (AR 551, 555-56, 561-62, 565, 567) and agitated. (AR 555, 567.) The ALJ failed to explain how, given evidence of distressed, flat, or tearful affect and outward signs of anxiety and agitation, Plaintiff could have interacted with the public, coworkers, and supervisors for up to one-third of

---

[26] AR 550-51, 554, 557-58, 561-62, 564-65, 567, 1401, 1441, 1452, 1464, 1471, 1501, 1559, 1570, 1585, 1587, 1590.

the workday. SSR 83-10. The ALJ did not explain why, given this evidence as well as evidence of Plaintiff's paranoid ideation[27], the ALJ did not find that Plaintiff could not have tolerated any interaction with the public, that she should have been limited to work that involved no tandem tasks with coworkers, or that she was limited to only brief and superficial contact with supervisors. The ALJ failed to explain how, given nearly five years of evidence that reflected little-to-no improvement in Plaintiff's psychiatric symptomatology, the ALJ determined that Plaintiff could tolerate occasional contact, as opposed to less-than-occasional contact or no contact whatsoever with the public, coworkers, and supervisors. Plaintiff did not testify that she could perform work tasks on a full-time basis provided that she was limited to only occasional contact with the public, coworkers, and supervisors and no psychiatrist opined that Plaintiff could perform full-time work given this limitation. *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No physician testified—no medical records [re]vealed—that [claimant] has the residual functional capacity ascribed to him by the administrative law judge...). Plaintiff argues that rather than relying on little more than lay intuition to determine the effects that Plaintiff's mental impairments had on her ability to interact with others, the ALJ should have summoned a second medical expert who could have reviewed all pertinent evidence and who could have offered a reasoned opinion of Plaintiff's RFC. *Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015); *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

In response, the Commissioner contends that the ALJ committed no error in finding that, despite suffering moderate restrictions in concentration, persistence, or pace, Plaintiff retained the RFC to perform simple, routine work at an average pace that did not require hourly or periodic

---

[27]   AR 450, 459, 1401, 1405, 1413, 1415, 1422, 1430, 1441, 1452.

production quotas. Despite over ten years of Seventh Circuit precedent that has consistently found equating moderate restrictions in concentration, persistence and pace to an ability to perform simple, routine work constitutes reversible error, the Commissioner maintains that the ALJ did not err in this instance because he relied on the testimony of a medical expert who concluded, without explanation, that Plaintiff could perform this type of work. The Commissioner asserts, without citing to any legal authority, that the ALJ's mere summation of the medical expert's testimony somehow created an exemption to the prohibition of finding that a claimant with moderate restrictions in concentration, persistence, or pace could perform simple, routine work at an average pace.

The ALJ cited no evidence from the medical expert's testimony that indicated that a limitation to work that involved simple, routine tasks accounted for Plaintiff's moderate restrictions in concentration, persistence, or pace. Limitations to simple, routine tasks address only the level of complexity of tasks that a claimant can perform. Neither the Commissioner nor the ALJ identify evidence that the medical expert supplied that suggested that Plaintiff could have performed tasks of even limited complexity. While the Commissioner maintains that the ALJ reasonably relied on the medical expert's discussion of evidence, the ALJ did not discuss any of the specific evidence that supported the medical expert's opinion and even acknowledged that the medical expert did not have access to the entire record. (AR 584.) Neither the Commissioner nor the ALJ explain exactly what evidence established that Plaintiff could "stick with [a] job" once she has been trained to perform it. *Kasarsky*, 335 F.3d at 544. *Accord* SSR 85-15. Medical

records reflect that Plaintiff suffered impaired focus[28]. Additionally, Plaintiff struggled with

motivation to perform even basic activities of daily living[29]. The ALJ failed to discuss if or how

the medical expert considered this evidence before she provided her opinion.

The Commissioner further argues that the ALJ committed no error in finding that Plaintiff

could tolerate occasional interaction with the public, coworkers, or supervisors. The

Commissioner contends that the ALJ relied on Plaintiff's own statements in finding an occasional

limitation in interacting with others as well as Plaintiff's activities in assessing these limitations.

However, the Commissioner fails to explain how the ALJ determined, based on Plaintiff's

statements and activities that she could tolerate occasional, as opposed to less-than-occasional,

brief and superficial, or additionally limited contact with the public, coworkers, and supervisors.

An ALJ must support his assessment of a claimant's RFC with evidence, either objective

or subjective. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). An ALJ's failure to identify the

evidentiary basis of his assessment of a claimant's RFC mandates remand. *Briscoe ex rel. Taylor

v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). An ALJ faces an "evidentiary deficit" once he

finds that none of the available medical evidence accounts for the totality of a claimant's

work-related functional restrictions. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). An

ALJ may not fill this deficit with his own lay speculation as to how a claimant's medically

determinable impairments limit her ability to work, for "ALJs must rely on expert opinions

---

[28]  AR 556, 1502, 1504, 1506, 1508, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1558, 1561.

[29]  AR 449, 459, 1403, 1405, 1408, 1413, 1415, 1422, 1426, 1430, 1436, 1437, 1439, 1441, 1454, 1456, 1460, 1464, 1466, 1468, 1471, 1473, 1477, 1479, 1481, 1485, 1488, 1490, 1492, 1494, 1500, 1502, 1506, 1508, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1537, 1540, 1549, 1552, 1555, 1558, 1561, 1564, 1567, 1570.

instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). The ALJ faced such a deficit once he found that Plaintiff was more limited than the medical expert found her to be. *Suide*, 371 F. App'x at 690.

While the Commissioner maintains that the ALJ properly relied on Plaintiff's statements and her activities, neither the Commissioner nor the ALJ explain how, for example, Plaintiff's allegation that she did not keep up with personal hygiene or that she spent most of the day in bed, established that she could interact with the public, coworkers, and supervisors up to one-third of the workday. *See* SSR 83-10. Neither the Commissioner nor the ALJ explain why this evidence did not establish that Plaintiff could tolerate no more than a total of 30 minutes of interaction with the public, coworkers, or supervisors or why that interaction should not have been more than brief and superficial. Similarly, neither the Commissioner nor the ALJ explain how Plaintiff's ability to eat lunch with her father or her ability to shop for groceries explain how the ALJ ascertained Plaintiff's ability to interact with others in the workplace. Furthermore, by asserting that the ALJ relied only on Plaintiff's statements and activities, the Commissioner concedes that the ALJ disregarded significant clinical medical findings. Evidence reflected that Plaintiff demonstrated distressed (AR 546), flat (AR 547-48, 549-52), or tearful affect.[30]; anxiety[31]and agitation. (AR 555, 567.) Additionally, Plaintiff demonstrated paranoid ideation[32]. The ALJ was required to predicate his assessment of Plaintiff's RFC on all relevant evidence and must consider objective

---

[30]  AR 550-51, 554, 557-58, 561-62, 564-65, 567, 1401, 1441, 1452, 1464, 1471, 1501, 1559, 1570, 1585, 1587, 1590.

[31]  AR 551, 555-56, 561-62, 565, 567.

[32]  AR 450, 459, 1401, 1405, 1413, 1415, 1422, 1430, 1441, 1452.

medical findings. SSR 96-8p. The Commissioner ignored the aforementioned objective medical evidence. *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013). If the ALJ disagreed with the medical expert's testimony, he should have summoned a second expert or followed up with the first expert through interrogatories rather than making a series of uninformed and unsupported conclusions based on Plaintiff's testimony and her activities of daily living. *Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015); *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). Thus, due to these errors in the ALJ's decision regarding Plaintiff's RFC, remand is required.

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff's subjective allegations were not entirely consistent with evidence. In assessing Plaintiff's subjective allegations that addressed the intensity, persistence, and limiting effects of her symptoms, the ALJ found that "...the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record..." (AR 581.) The Seventh Circuit has criticized use of similar phraseology ("not entirely credible"), dismissing it as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). *Accord Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) (ALJ failed to identify which of claimant's statements he found to be not credible or how credible or not credible he found the statements to have been when he concluded that claimant's allegations were not entirely credible); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (ALJ did not explain what he intended when he found claimant's allegations to have been not entirely credible). An ALJ must supply sufficient detail in his analysis that permits the Court to conduct meaningful judicial review and to trace the path of the ALJ's reasoning. *Scott v. Barnhart*, 297

F.3d 589, 595 (7th Cir. 2002).

In the present case Plaintiff argues that the ALJ did not identify which of Plaintiff's subjective allegations he found to have been consistent with evidence, which allegations he found to have been inconsistent with evidence, or how consistent or inconsistent he found any particular allegation to have been. The ALJ, for example, failed to explain if she found Plaintiff's allegation that she could concentrate for no longer than 20 minutes at one time (AR 617) to have been consistent with evidence, inconsistent with evidence, or how consistent with evidence he found this particular allegation to be. The ALJ did not explain if she found Plaintiff's allegation that, despite the use of psychotropic medication, she was constantly depressed (AR 623) to have been consistent with evidence, inconsistent with evidence, or how consistent with evidence he found this allegation to be. Plaintiff argues that in finding that Plaintiff's subjective allegations were not entirely consistent with evidence, the ALJ presumed that Plaintiff's statements needed to be fully consistent with evidence. This contradicts the Commissioner's own regulations as well as Seventh Circuit case law which require that an ALJ apply the preponderance of the evidence standard. 20 C.F.R. § 404.953(a). *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) (citation omitted). *See also, e.g., Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018). The preponderance of the evidence standard requires an ALJ to accept a fact where relevant evidence as a whole "...shows that the existence of the fact to be proven is more likely than not." 20 C.F.R. § 404.901.

Plaintiff points out that aside from the boilerplate statement that found Plaintiff's subjective allegations to have been not entirely credible, the ALJ conducted no further analysis of Plaintiff's subjective allegations. SSR 16-3p required the ALJ to explain how he considered

Plaintiff's:

> (d)aily activities; (t)he location, duration, frequency, and intensity of pain or other symptoms; (f)actors that precipitate and aggravate the symptoms; (t)he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (t)reatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (a)ny measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (a)ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ's decision is devoid of any discussion of the aforementioned factors. The ALJ did not, for example, explain how he considered that Plaintiff regularly affirmed that she lacked the motivation to perform activities of daily living that consisted of both regular personal hygiene and household chores[33]. The ALJ failed to explain why Plaintiff would not have regularly bathed, put away groceries, or wash dishes unless her mental impairments drained her of all energy and motivation. The ALJ failed to explain how he determined that Plaintiff could have performed work tasks on a full-time basis when she was unable to perform basic activities of daily living, which she could have performed on her own schedule and when she felt most up to activity. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (explaining differences between activities of daily living which a claimant can perform on own schedule and work tasks which are performed within the strictures of the workplace setting). The ALJ failed to explain if or how he considered the numerous psychotropic medications that Plaintiff's psychiatrists prescribed over the years. Plaintiff's psychiatrists prescribed antidepressants, antipsychotics, and antianxiety medications that included Lithium, Lexapro, Effexor, Depakote, Wellbutrin, Viibryd, Latuda,

---

[33] AR 449, 459, 1403, 1405, 1408, 1413, 1415, 1422, 1426, 1430, 1436, 1437, 1439, 1441, 1454, 1456, 1460, 1464, 1466, 1468, 1471, 1473, 1477, 1479, 1481, 1485, 1488, 1490, 1492, 1494.

Abilify, Pristiq, Xanax (AR 520), Geodon, Lamictal (AR 1501), Brintellix (AR 1507),

Trazodone, (AR 1511), Fetzima (AR 1514), Tegretol (AR 1520), Trileptal (AR 1539), Sapharis

(AR 1542), Cymbalta (AR 1551), Rexulti (AR 1569), Celexa (AR 1575), and Buspar. (AR 1584.)

The ALJ did not explain if or how he considered that Plaintiff's psychiatrists would have only

prescribed these strong psychotropic medications if they believed that Plaintiff suffered from

debilitating mental impairments. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)

(claimant unlikely to successfully fool physicians into prescribing powerful medications only to

bolster claimant's application for Disability Insurance Benefits). Plaintiff's psychiatrist changed

Plaintiff's medication regimen frequently, altering dosages and prescribing new medications for

ineffective ones, because Plaintiff's depression, anxiety, paranoia, and lack of interest and

motivation were intractable. Furthermore, Plaintiff testified that the antipsychotic Geodon

produced fatigue as a side effect. (AR 623.) The ALJ was required to address any side effects that

Plaintiff alleged that her medications produced. SSR 16-3p. *Accord Stephens v. Colvin*, 2014 WL

1047817, *10 (N.D. Ind. 2014); *Kinsey-McHenry v. Colvin*, 2013 WL 5460161, *10 (N.D. Ind.

2013); *Dross-Swart v. Astrue*, 872 F. Supp.2d 780, 798 (N.D. Ind. 2012).

　　　Plaintiff contends that the ALJ's error in determining if it was reasonable to conclude that

Plaintiff suffered fatigue from this medication was not harmless, for, if Plaintiff was fatigued in

the workplace and, as a result, was off-task for more than 15 percent of the workday, she would

be precluded from competitive employment. (AR 637.)

　　　The Commissioner argues that the ALJ committed no error in evaluating Plaintiff's

allegations that addressed the intensity, persistence, and limiting effects of Plaintiff's pain and

symptoms.  The Commissioner contends that the Court should uphold the ALJ's assessment of

Plaintiff's subjective allegations because that assessment was not patently wrong. As the Seventh

Circuit has held, a Court "…will overturn an ALJ's decision to discredit a claimant's alleged

symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support.

*Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). A credibility determination lacks support

when it relies on inferences that are not logically based on specific findings and evidence. *Id*."

*Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

In the present case Plaintiff argues that the ALJ's assessment of Plaintiff's subjective

allegations was patently wrong because the ALJ relied on inferences that were not logically based

on specific findings or evidence.

The Commissioner contends that the ALJ properly considered Plaintiff's activities of daily

living, for the ALJ noted that Plaintiff was able to drive an automobile and considered Dr.

Graham's statement that social situations aggravated Plaintiff's anxiety. To the extent that the

mere reference to Plaintiff's ability to drive an automobile and a statement by her psychiatrist that

social situations aggravated Plaintiff's anxiety constituted a discussion of Plaintiff's activities of

daily living, neither the Commissioner nor the ALJ explain how this evidence contradicted any of

Plaintiff's specific allegation, which the ALJ was required to explain. *Zurawski v. Halter*, 245

F.3d 881, 887 (7th Cir. 2001). Both the Commissioner and the ALJ ignored evidence that favored

Plaintiff's subjective allegations, including evidence that Plaintiff lacked the motivation to

perform many activities of daily living or maintain regular personal hygiene[34]. The ALJ was

required to predicate his decision on all pertinent evidence and was not permitted to rely solely on

---

[34]  AR 449, 459, 1403, 1405, 1408, 1413, 1415, 1422, 1426, 1430, 1436, 1437, 1439, 1441, 1454, 1456, 1460, 1464, 1466, 1468, 1471, 1473, 1477, 1479, 1481, 1485, 1488, 1490, 1492, 1494.

evidence that favored a finding of non-disability. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

The Commissioner further contends that the ALJ properly considered that Plaintiff informed her therapist that she was doing well keeping up with certain household tasks which she did not do prior to beginning therapy and that she simultaneously affirmed that she had difficulty maintaining her activity level and needed to do more during the day. The Commissioner fails to explain the significance of these observations. If anything, that Plaintiff affirmed that she was able to keep up with certain household chores but had difficulty maintaining activity during the day reflects that a claimant who suffers from a chronic mental impairment and who receives treatment in the form of strong psychotropic medication, as Plaintiff did, was likely to suffer both good and bad days. *Bauer v. Astrue*, 538 F.3d 606, 609 (7th Cir. 2008).

The Commissioner contends that the ALJ reasonably considered that the medical expert testified that Plaintiff's medications were working and that Dr. Graham noted that medication helped Plaintiff's severe anxiety.  To the extent that this constituted meaningful analysis of the medications that Plaintiff was prescribed as SSR 16-3p required, first, the Commissioner fails to recognize that improvement is relevant only to the extent that it restores a claimant's ability to engage in substantial gainful activity. *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014); *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561 (7th Cir. 2008). While the medical expert may have believed that these medications were effective, three treating psychiatrists, whose opinions the ALJ rejected, concluded that Plaintiff was unable to engage in substantial gainful activity. Second, Plaintiff was prescribed over 20 different psychotropic medications.  Neither the

Commissioner nor the ALJ explain why Plaintiff's psychiatrists would have prescribed numerous and powerful psychotropic medications unless they believed that Plaintiff's mental impairments produced the debilitating symptoms that she alleged.

Clearly, Plaintiff has detailed significant errors in the ALJ's credibility assessment such that this court finds the assessment to be patently wrong, requiring remand.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: June 13, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court